UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHI TAM DANG a/k/a Tam Dang,

Petitioner,

v.

Case No: 6:13-cv-1873-Orl-28KRS
(6:11-cr-295-Orl-28KRS)

UNITED STATES OF AMERICA,

Respondent.
_____/

## ORDER

This cause is before the Court on the Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) (the "Motion to Vacate") filed by Petitioner, Chi Tam Dang a/k/a Tam Dang, pursuant to 28 U.S.C. § 2255. Dang also filed a Memorandum of Law (Doc. 2) in support of the Motion to Vacate. The Government filed a Response in Opposition to the Motion to Vacate (Doc. 3) (the "Response") in compliance with this Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner filed a Reply (Doc. 8) to the Response. For the reasons set forth herein, the Motion to Vacate is denied.

### I. PROCEDURAL BACKGROUND

A Grand Jury charged Dang and four other individuals with conspiracy to distribute and to possess with intent to distribute 100 kilograms or more of marijuana.

(Criminal Case Doc. 59).[1] Dang subsequently pled guilty to the charge without a plea agreement. The Court held a hearing on the plea and ultimately accepted it. (Criminal Case Doc. 244). The Court adjudicated Dang guilty of the crime and sentenced him to imprisonment for a term of 87 months to be followed by supervised release for a period of 4 years. The Eleventh Circuit Court of Appeals affirmed the conviction and sentence. (Criminal Case Doc. 234).

Dang next filed an Unopposed Motion for Sentence Reduction Under Amendment 782 (Criminal Case Doc. 258). Amendment 782 to the United States Sentencing Guidelines reduced the sentencing guidelines for most federal drug trafficking offenders. Specifically, Amendment 782 reduced by two levels the offense levels in USSG § 2D1.1(c)'s Drug Quantity Table.[2] The Court entered an Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), which granted the motion and reduced Dang's sentence to imprisonment for a term of 70 months. (Criminal Case Doc. 259).

## II. Legal Standards

### A. Standard for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced

---

[1] Criminal Case No. 6:11-cr-295-Orl-28KRS will be referred to as "Criminal Case."

[2] As a result, Petitioner's total offense level was reduced from 27 to 25.

the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### III. ANALYSIS

#### A. Claims One and Four

Dang alleges as follows: his counsel was ineffective 1) by "failing to argue that the Role-In-The-Offense enhancement was improper because there was no five or more people involved nor was the offense extensive" (claim one); and 2) "by failing to correctly and accurately argue the Role-In-The-Offense Enhancement." (Doc. 2 at 6, 9).

Dang received an adjustment for his role in the offense because he "was an organizer or leader in the criminal activity that involved five or more participants or was otherwise extensive." (Presentence Investigation Report at 6). The Eleventh Circuit

3

Court of Appeals in its opinion affirming the conviction and sentence noted that "Dang was directing the three people with whom he was seen traveling and mailing packages in California." (Criminal Case Doc. 234 at 6). Dang appears to rely on the Eleventh Circuit Court of Appeals mentioning that Dang was directing the "three people" in California.

However, the Eleventh Circuit Court of Appeals also discussed that Dang "both fronted [Arlonzo] Moore drugs and told Moore how to deliver the proceeds from the drug sales. On several occasions, he even directed Moore to carry the case to him on flights to California." (Criminal Case Doc. 234 at 6). When including Moore, the participants in the organization totaled five: Dang, Moore, and the three others in California.[3]

In the Reply, Dang mentions other arguments counsel should have raised to show that Dang was not a leader. (Doc. 8 at 8). However, counsel specifically raised an objection to the Presentence Investigation Report (the "PSR") regarding the enhancement for a leadership role: "Defense counsel objects to the four level enhancement for a leadership role." (PSR at 16). Counsel also raised several arguments in support of the objection.

In addition, Dang's counsel filed a thorough and extensive Sentencing Memorandum raising several arguments in support of his objection, concluding that

---

[3]*United States v. Holland*, 22 F.3d 1040, 1045 (11th Cir. 1994) ("when determining the number of participants, the defendant is considered to be one of the five.").

4

Dang "categorically rejects and denies any facts or allegations claiming he was an organizer or leader of this conspiracy." (Criminal Case Doc. 158 at 7). Moreover, at sentencing, counsel objected to Dang being designated as an organizer or leader. (Criminal Case Doc. 188 at 3-4, 29-32).

Further, the criminal activity was "otherwise extensive." Dang's drug organization was responsible for the distribution of over 100 kilograms of marijuana over the course of more than a year. The packages were mailed by different conspirators at post offices located throughout the Northern District of California and were received by several different conspirators located in the Middle District of Florida, North Carolina, New Jersey, Tennessee, and New York. The extensiveness of Dang's organization is confirmed by the large amount of proceeds that he received (over $1.4 million). As a result, Dang's criminal activity qualified as "otherwise extensive."

Dang has not shown that counsel acted deficiently with regard to these issues or that he sustained prejudice. As a result, claims one and four are denied.

### B. Claim Two

Dang argues that counsel was ineffective "by failing to object to drug attribution for which [he] was held accountable for, for sentencing purposes." (Doc. 2 at 7). Dang states that the amount of marijuana he sent to Moore involved substantially less than 100 kilograms. (*Id.*). Dang also claims that he did not personally know any of the

lower-level distributors and that none of the marijuana shipped to those individuals should have been attributed to him at sentencing. (*Id.*).[4]

Prior to the plea hearing, the Government filed a Notice of Maximum Penalty, Elements of Offense, Personalization of Elements, and Factual Basis (the "Notice"), which indicated that Dang was "involved in a conspiracy to distribute and possess with intent to distribute 100 kilograms [or] more of marijuana." (Criminal Case Doc. 119 at 2). At the plea hearing, Dang acknowledged that he had read the Notice, that he had discussed it with his counsel, and that the facts stated therein were true. (Criminal Case Doc. 244 at 14). As the Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), "the representations of the defendant [at the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Dang has not made a sufficient showing to refute the veracity of his responses at the plea hearing or the weight his plea should be accorded in this Court.

Further, relevant conduct includes all acts committed or willfully caused by the defendant, as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Thus, Dang's relevant conduct included the amount of marijuana that he and his conspirators

---

[4]Dang mentions in the Reply that counsel did not inform him of his right to object to the PSR. (Doc. 8 at 10-11). However, as previously discussed, Dang's counsel did file an objection to the PSR.

6

mailed to Moore and the others involved in the conspiracy, regardless of whether Dang knew who they were or had personal contact with them aside from mailing them marijuana parcels.

Consequently, the Court finds that Dang has failed to show that counsel acted deficiently with regard to this matter or that he sustained prejudice.[5]

### C. Claim Three

Dang asserts that his counsel was ineffective by failing to secure a more favorable plea. Specifically, Dang claims counsel "should have negotiated for a two or three level increase for role in the offense, and should have negotiated for a lesser drug attribution, based upon the affidavit of Haab." (Doc. 2 at 8). Dang states that "the indictment . . . does not allege any starting date, and the affidavit of Haab does not establish any connection between Dang and other members of Moore's conspiracy, save Moore himself." (*Id.*).

This claim is without merit. First, Dang does not explain why the indictment's failure to allege a starting date is relevant to counsel being ineffective for failing to secure a more favorable plea. Second, Dang properly received an adjustment for his role in the offense because the conspiracy involved five or more participants and was

---

[5]Dang mentions in the Reply that appellate counsel should have challenged his sentencing enhancement. (Doc. 8 at 14). However, appellate counsel did argue that the Court erred by finding that Dang was a "leader or an organizer" at sentencing. (Doc. 5-1 at 4, 18-33). Moreover, as previously discussed, Dang properly received the sentencing enhancement. Thus, Dang has not shown that appellate counsel acted deficiently with regard to this matter or that he sustained prejudice.

7

otherwise extensive. Finally, the record establishes that the amount of marijuana involved in Dang's conspiracy was 100 kilograms or more.

As such, Dang's counsel had no basis for seeking any of the concessions suggested by Dang. In addition, "[p]lea agreements and their terms are a matter of prosecutorial discretion, . . . and the government is not required to accept any plea deal offered by a defendant. A petitioner thus fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible." *Cummings v. United States*, No. CR 110-107, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013).

Under the circumstances, the Court finds that Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice with regard to this matter. Consequently, claim four is denied.

Allegations not specifically addressed herein are without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

8

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

### V.   CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

2. This case is **DISMISSED with prejudice**.

3. Petitioner is **DENIED** a certificate of appealability.

4. The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 6:11-cr-295-Orl-28KRS.

5. The Clerk of the Court is directed to terminate the section 2255 motion (Criminal Case Doc. 239) filed in criminal case number 6:11-cr-295-Orl-28KRS.

**DONE** and **ORDERED** in Orlando, Florida on August 26, 2015.

                                                                          JOHN ANTOON II
                                                                          UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 8/26

9